## Katch et al. v. Benton Coal Co.

A judgment having been obtained upon a claim before a Justice of the Peace, another Justice has no jurisdiction to entertain an action upon a judgment obtained before the former Justice, under the Act of March 20, 1810. That Act confers the right of Action before a Justice of the Peace only upon "all causes of action arising from contract either express or implied."

The individual liability of a stockholder under the Act of April 29, 1874, P. L. 73 as amended by the Act of April 17, 1876, P. L. 30 being purely statutory and having no existence outside of the legislation, whenever it is invoked must be enforced in the very manner prescribed by the other portions of the act, there being no liability by virtue of a contract express or implied: hence the Justice had no jurisdiction.

JURISDICTION—CORPORATIONS—LIABILITY OF STOCK-
HOLDERS—WAGES.

No. 109, January Term, 1900, C. P. of Center County, John G. Love, P. J. Appeal No. 125 October Term, 1901, Superior Court.

Calvin M. Bower and Ellis L. Orvis, Attys. for Appellant.
Edmund Blanchard and John Blanchard, Attys. for Appellee.
Argued in Super. Ct. Nov. 1, 1901.

### FACTS INVOLVED IN THE CASE.

Prior to July 7, 1899, the Benton Coal Company had been conducting the business of miners and shippers of coal on some of the property of the Blubaker Coal Company by virtue of a lease with the latter corporation. The Benton Coal Co. became insolvent and failed to pay the wages due its employees. The mines were closed and the business of the insolvent company ceased, and the miners failing to receive their wages brought suits and obtained at least thirty individual judgments against

the Benton Coal Co. before Anthony Anna, J. P. These judgments were obtained July 7, 1899. Executions were issued and the personal property of the Benton Coal Co. was levied upon and advertised for sale for the 20th of July, 1899. On the day of the sale, the Blubaker Coal Co., owner of the real estate, paid the laboring men their wages and took an assignment of the same. On the day of the sale, a number of persons were present for the purpose of bidding. The constable sold the property to the Blubaker Coal Co., for $603.00. The total amount of claims assigned amounted to $2,000.00.

G. Murray Andrews, one of the appellees, was not only an official of the Benton Coal Co., but a large stockholder, owning 106 shares, par value $100.00 each. Subsequently, Nov. 27, 1899, 27 suits were brought under the Act of April 29, 1874, against the Benton Coal Co. and G. Murray Andrews jointly by 27 of these laboring men, each to the use of the Blubaker Coal Co. These suits were brought before J. M. Keichline, J. P., for claims ranging from $8.74 to $149.99. Judgments were entered in favor of the plaintiffs; whereupon the defendants took appeals to the C. P. of Center county. After the proper entry of said appeals, plaintiffs and defendants on March 21, 1901, effected a consolidation thereof by agreement. All the 27 cases were therefore tried as one case resulting in a verdict in favor of the plaintiffs for $1,370.08. Subsequently, upon reserved points, the trial judge entered judgment in favor of the defendants *non obstante veredicto* on the ground of a want of jurisdiction of the justice.

Error assigned—Entering judgment for the defendants *non obstante veredicto* upon five points reserved by the Court.

Opinion by W. D. PORTER, J., March 14, 1902.

Twenty-seven actions of assumpsit were brought, by as many legal plaintiffs but all to the use of the Blubaker Coal Company, against the defendants before a Justice of the Peace of Center county. The Justice entered judgment in each of the cases against the defendants, who appealed to the Court of

Common Pleas. The legal plaintiff in each of the appeals was a different individual, but the Blubaker Coal Company was the equitable plaintiff in all of the cases, which all presented the same questions. By an agreement between the parties, with the approval of the Court, all the appeals were consolidated and tried in the Court below as one action. At the trial in the Common Pleas the only evidence offered by the plaintiffs which would have warranted the submission of the question of the liability of either of the defendants to any one of the legal plaintiffs, for any amount whatever, was the Docket of Anthony Anna, a Justice of the Peace of Cambria county. That Docket showed that each of the twenty-seven present legal plaintiffs had brought an action for wages against the Benton Coal Company before the Justice of the Peace in Cambria county, and that judgments had been entered against the defendant in said actions in amounts which corresponded, respectively, with the amounts of the several judgments entered by the Justice of the Peace in Center county in the subsequent actions, in which the appeals, here consolidated, had been taken. It was proved that all of these Cambria county judgments had been assigned to the Blubaker Coal Company, and it was admitted that G. Murray Andrews was a stockholder in the Benton Coal Company to an amount in excess of the aggregate of these claims. The defendants having made an offer of evidence which was rejected, introduced no testimony. The learned judge of the Court below instructed the jury to find a verdict in favor of the plaintiffs in the sum of $1,370.08, formally reserving the questions of law raised by two points presented on behalf of the defendants. The points reserved were: "1. There is no jurisdiction in the Justice of the Peace in these cases nor in the Common Pleas on appeal, and the verdict must be for the defendants and the jury is instructed so to find." "5. Under all the evidence the plaintiff cannot recover and the verdict must be for the defendant."

The first point squarely raises the question of the jurisdiction of the Justice of the Peace of Centre county over such a

claim as that established by the undisputed evidence of the plaintiff. While the form of the reservation of the question under the Fifth point of the defendant might be the proper subject of criticism, the facts being undisputed we are free to disregard the mere form and consider the substance of the reservation. The question reserved under that point really was: "Is there any evidence which would entitle the plaintiff to recover?" The only evidence presented by the plaintiff of liability on the part of the defendants was the judgments which had been entered by the Justice of the Peace in Cambria county. The statutes limiting the jurisdiction of a Justice of the Peace are not left behind when the case comes into the Common Pleas by appeal, but are to be applied by the Judge in the same manner as by the Justice. If the Justice had not jurisdiction of the cause of action or the contract or demand, the Court of Common Pleas will not have it after an appeal. The forum is changed by the appeal but the cause of action remains the same. "It is true that for certain purposes a trial in the Common Pleas after an appeal from the Justice is de novo, but it is nevertheless a trial of the same case, the mechanical work of a trial, such as the formation of the proper issue, the production of the testimony and the decision of the questions involved is de novo, but the cause of action remains the same: Deihm v. Snell, 119 Pa. 316. It is clear that in the appellate Court the appellee cannot substitute another and a different claim: Wright v. Guy, 10 S. & R. 227. The Act of March 20, 1810, in conferring civil jurisdiction on Justices of the Peace restricted it to "all causes of action arising from contract, either express or implied; and by the course of decisions on this point it is held that these words embrace causes of action arising immediately out of a course of dealing between the parties, and not that sort of contract which arises remotely from the compact of government." A debt on a judgment cannot be said in legal phraseology to be a debt arising on a contract; it is a sum of money due by a decree of a Court or magistrate. An action will not lie before a Justice of the Peace for the balance due on a judgment in the Court of Common Pleas (Easton v. Smith, 8

S. & R., 343) ; nor on an action arising on a judgment of a Justice of the Peace of another State, in the absence of express statutory authority: Ellsworth v. Barstow, 7 Watts 314.   Suit does not lie before a Justice of the Peace for the balance due on a judgment before another justice except in the particular form prescribed by the Act of March 20, 1810: Com. v. Reynolds, 17 S. & R. 369; Kline v. McKee, 46 Pa. 519.   The Act of 1810 provided for but two cases in which one. Justice could proceed upon the transcript of another; Sec. 16 made provision for the case of the resignation, removal from office or death of the Justice by directing the delivery of his Docket to the nearest Justice of the county, or in case the Docket was retained the certification of transcripts thereof to other magistrates, who are empowered to issue process thereon; Sec. 17 made provision, in certain cases, for the delivery of certified transcripts "for the recovery of the amount thereof with costs, before any Justice of the Peace in any county where the defendant may reside or can be found, as in cases originally brought before him." The 16th section can have no application to this case.   The provisions of the 17th section have been frequently discussed and their meaning judicially determined; it is clear, then, that the object was not to originate another action for the same cause in which the existing judgment might be evidence of indebtedness, but to have execution of the existing judgment itself, as in cases originally brought before the Justice, who might therefore issue execution on it without the precaution of a *scire facias,* although that may be a very proper measure: Keck v. Appleback, 2 P. & W. 465 ; Keeler v. Neal, 2 Watts, 424. "From this view it is obvious that a Justice has no jurisdiction to entertain an action at common law upon the judgment of another Justice: Koons v. Headley, 49 Pa. 168.   The plaintiffs having first obtained their judgments before a Justice of the Peace in Cambria county originated another action for the same cause, in which they used the existing judgments as evidence and as the only evidence of indebtedness.   This is the very thing which the cases cited hold was not warranted by the provisions of the Act of 1810.   The

Katch et al. v. Benton Coal Co.

cause of action established by plaintiffs' evidence was one of which
the Justice of the Peace had no jurisdiction, and there was no
error in the entry of the Judgment in favor of the defendants
*non obstante veredicto.* Another objection to the jurisdiction of
the Justice of the Peace is found in the nature of the liability
sought to be enforced against the defendant Andrews. The Ben-
ton Coal Company was incorporated under the provisions of the
Act of April 29, 1874, P. L. 73, and these actions were brought
for the purpose of enforcing the individual liability of a stock-
holder imposed by the 14th Section of that Act as amended by
the Act of April 17, 1876, P. L. 30, Sec. 3. The special limited
and restrained form of liability imposed upon stock-holders by
this legislation is in the nature of a penal obligation for dere-
liction of duty or an additional personal monetary duty im-
posed upon stock-holders in favor of mechanics and laborers, out
of consideration for the meritorious character of their claims. This
liability is purely statutory, having no existence outside of the
legislation, and whenever it is invoked it must be enforced in the
very manner prescribed by the other portions of the act: Brin-
ham v. Wellersburg Coal Company, 47 Pa. 43; Hoard v. Will-
cox, 47 Pa. 51; Mansfield Iron Works v. Willcox, 52 Pa. 377;
Appeal of Means, 85 Pa. 75; Lane's Appeal, 105 Pa. 49. The
nature of the liability imposed upon stock-holders by legislation
of this character was considered by the Supreme Court in Dreis-
bach v. Price, 133 Pa. 560. In that case one of the stock-holders
was a married woman and thought to escape liability upon the
ground of her coverture, the contention was held not to be well
founded, the Court saying: "That the liability is one created by
statute and a married woman who holds shares of stock in such
a corporation takes it *cum onere* subject to whatever responsi-
bility the law imposes upon the stock-holders of such shares.
She is as much liable to creditors in such case, as she would be
liable for taxes upon her real estate. In either case the liability
is purely statutory and arises from no contractual relation but
solely from the possession and ownership of the property." If
therefore Andrews was individually liable for these claims, that

liability did not arise from contract express or implied and the Justice had no jurisdiction of the action as to him. The judgment is affirmed.